(No. 28511.—

The People of the State of Illinois, Defendant in Error, *vs.* Huston R. Booth, Plaintiff in Error.

*Opinion filed May 23, 1945.*

Lawrence M. Fine, of Chicago, for plaintiff in error.

George F. Barrett, Attorney General, and William J. Tuohy, State's Attorney, of Chicago, (Thomas P. Grant, and John T. Gallagher, both of Chicago, of counsel,) for the People.

Mr. JUSTICE MURPHY delivered the opinion of the court:

On July 1, 1943, leave was granted to file an information in the municipal court of Chicago charging defendant, Huston R. Booth, with having neglected and refused to maintain and provide for his minor daughter, Catherine, said child then and there being in destitute and necessitous circumstances. On a trial without a jury, defendant was found guilty and ordered to pay $65 per month to the guardian of the child for her use and benefit. The Appellate Court affirmed the judgment. Defendant filed a petition for leave to appeal but, this being a criminal action, (*People* v. *Heise,* 257 Ill. 443,) he was entitled, under section 11 of article VI of the constitution, to a review by writ of error as a matter of right. The petition for leave to appeal has been treated as a writ of error in accordance with Rule 28.

The evidence shows that defendant and the mother of Catherine were divorced in 1929 and that Catherine resided with her mother. The mother died in December, 1942. Catherine attended a private school and after her mother's death she continued in her school work until the end of the school year. From soon after the mother's death to about April 1, 1943, Catherine lived in a private home. On or about the latter date she went to the home of her guardian, Mabel Flick, where she continued to reside until the trial in July following.

On May 3, 1941, Catherine's mother created a trust for the benefit of herself for life, with remainder to the child. The *corpus* of the trust consisted of two improved parcels of real estate which the undisputed evidence shows yielded a gross annual rental of $1350. It was stipulated the fair cash value of said property was $10,000, the title of which was subject to a mortgage lien of $1500. There is a conflict in the evidence as to the state of repair of the buildings on the real estate and the net amount of the

annual income. The People concede that the net rentals would be at least $400 per year. Catherine was the sole heir and beneficiary of her mother's estate, and, in addition to the trust property, she received other small items of personal property. None of it had been paid when this action was started, but it is stated in the People's brief that since that time the personal representative of the estate paid Catherine's guardian $587.39 and delivered securities in kind of an estimated value of $1000.

Mabel Flick testified that defendant had not contributed to the support of his child for six months prior to the hearing, except to give her some spending money and two articles of wearing apparel which cost $52. She also testified that board for five and one-half weeks was due the person who supported Catherine in the early part of 1943 prior to April 1. The amount of the bill for such board. is not shown. It also appears that $125 was due the private school for Catherine's tuition and that the school authorities refused to certify her school credits until the tuition was paid in full.

No other evidence was offered on behalf of the People as to the child's destitute and necessitous circumstances. The guardian estimated that Catherine's financial needs would be about $20 per week. At the time of the hearing, Catherine was fifteen years of age.

Defendant testified that during the year 1942 he paid $90 per month for and on behalf of his daughter and during the first. six months of 1943, up to the time of his arrest, he paid $60 per month. The brief filed on behalf of the People contains the significant statement that the State does not dispute defendant's testimony as to the amounts he contributed in 1942 and the first six months of 1943. Defendant also testified that he was engaged in the profession of optometry, that his net earnings during 1943 were approximately $135 per month; that he contributed $5 per week to the support of his aged mother

and paid the cost of an insurance policy on his own life in the amount of $10,000, in which Catherine was named as the sole beneficiary.

The brief filed on behalf of the People stresses the civil liability that rests upon every parent to support his or her child, notwithstanding such child has adequate means of its own for such purposes. Many cases are cited, but *Bedford* v. *Bedford,* 136 Ill. 354, and *Hanford* v. *Prouty,* 133 Ill. 339, are illustrative of the principle advanced by the prosecution.

This is a criminal action brought in the name of the People, prosecuted by the State's Attorney of the county, the same as any other criminal action. The statute prescribes the elements of the offense and it controls, notwithstanding the liability of a parent to support a child, as fixed by the statute, may be different from that imposed in a civil action.

The information was filed under section 1 of an act making it a misdemeanor to neglect to provide for a destitute wife or children. (Ill. Rev. Stat. 1943, chap. 68, par. 24.) It provides that "Every person who shall * * * without lawful excuse, desert or neglect or refuse to provide for the support or maintenance of his or her child or children under the age of eighteen years, in destitute or necessitous circumstances, shall be deemed guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not to exceed six hundred dollars or by imprisonment in the county jail, house of correction or work house, not to exceed one year, or by both such fine and imprisonment." The act further provides that whenever a fine is imposed, the court may direct it to be paid in whole or in part to the guardian or custodian of the minor child or children, with certain provisos which are not at issue in this case.

The part of the statute to be interpreted and applied in this case is as to the words which make the destitution

of the child and its necessitous circumstances elements which must be proved to establish a case. The words "destitute" and "necessitous" convey the same meaning. They are used in the sense that the child is without those things essential to its health, care and education. To be more specific, they mean that the child is without some one or more of things such as medical or hospital attention, proper home, suitable care, food, clothing and reasonable facilities for educational gain. These are not suggested as all-inclusive but are mentioned as some of the factors, the proof of which would show a child to be in destitute and necessitous circumstances. They are factual conditions which are to be proved as any other fact essential to the establishment of a crime.

In the instant case, the crime alleged has not been proved. The statement of the prosecution that the evidence of the defendant is not disputed that he paid $90 per month in 1942 for the support of the child and $60 per month for the first six months in 1943 is, in legal effect, an admission that such payments were made. By such admission of fact, it is shown that when the information was filed in this case the defendant was contributing $60 per month for the support of the child, when, according to the opinion of her guardian, her financial needs would be approximately $80 per month. Furthermore, the evidence shows the child's estate, from the trust and in the hands of the guardian, was of substantial value. There is no proof to show the unavailability of either of these funds. Counsel for the People urge that the financial condition of the child's estate cannot be considered in determining whether she was destitute and in necessitous circumstances, and cite cases from courts of other jurisdictions to sustain them. An examination of the statutes in those States shows the language to be materially different from the statute of this State. For an analysis of such cases and the statutes on which the actions were based, see

annotation in 131 A.L.R. 482. There is nothing in the statute of this State which indicates the legislature intended the words "destitute or necessitous circumstances" should be given the application contended for on behalf of the People.

For the reasons stated, the judgments of the municipal court and the Appellate Court are reversed.

*Judgments reversed.*